WILLIAM STANDISH *vs.* NARRAGANSETT STEAMSHIP COMPANY.

The facts that a traveiler bought a ticket for his passage by a steamboat, and that he was not asked for the ticket during the passage, warrant a finding that he knew he was to give it up before leaving the boat.

If it is the custom of carriers by a steamboat to collect the passage tickets as the passengers are leaving the boat, and a passenger attempts to land without a ticket, alleging that he has lost it, the carriers have a right to detain him a reasonable time, to inquire on the spot into the circumstances of the case.

If carriers by steamboat require passengers to buy tickets before going on board, and to deliver them up on landing, the loss of a ticket by a passenger falls on him, and not on the carriers, and it is his duty on landing to pay the amount of the fare.

TORT for assault and battery and false imprisonment. *Ad damnum,* $2000. Trial in the Superior Court, before *Putnam, J.,* who allowed the following bill of exceptions :

" The plaintiff offered evidence tending to show that on March 25, he purchased at the station of the Old Colony & Newport Railway Company, in Boston, tickets entitling him to a passage from Boston to Philadelphia by way of the Old Colony & Newport Railway to Fall River, thence by the defendants' steamboat to New York, and thence by railroad to Philadelphia ; that all the tickets were stamped with the date of purchase, and purported to be issued by the Old Colony & Newport Railway Company, which had authority to issue them ; that the checks given to the plaintiff for his baggage purported to be issued by the same company ; that the ticket for the boat was not attached to the others ; that the plaintiff was informed, when he purchased his tickets, that the number of his berth would be put upon that ticket on board the boat ; that this ticket had printed on it the words ' good for this day only ; ' that on board the boat, between ten and eleven o'clock at night, the plaintiff showed this ticket to the clerk of the boat and the latter assigned him a berth, and put the number of it on the ticket ; that as the plaintiff was about to enter his berth, an employé of the defendants, as was his duty, asked the plaintiff to show him his ticket, and it being handed to him, he examined it and said it was all right ; that the plaintiff had no recollection of what became of the ticket afterwards ; that

the next morning, the boat having arrived at its landing in New York, as the plaintiff was passing off the boat with the other passengers, his ticket was demanded of him by the defendants' agents, and he, not producing it, was turned back; that after the crowd had passed off and the defendants' agents were comparatively at leisure, the plaintiff inquired why he was detained, and was told it was for not producing and giving up his boat ticket; that the plaintiff explained what had taken place the night before when his ticket was marked by the clerk for his berth, and at his berth when upon his demand he handed his ticket to an employé of the defendants in attendance in the cabin; that he then showed to the defendants' agents his tickets for Philadelphia and his baggage checks; that he said he did not know what had become of the ticket required of him, but he must have lost it; and that the defendants' agents told him that if he could not produce the ticket he must pay them four dollars, the fare from Fall River to New York, otherwise he could not go ashore, and they should carry him back to Fall River, and that the ticket was as good as four dollars to the company.

" The plaintiff testified that when he made the statement to the clerk in New York that he must have lost his ticket, he believed that he had, in fact, lost it; that he protested against the right of the defendants to detain him and refused to pay the four dollars demanded; that subsequently, he told the clerk that he meant to force his way ashore, and on again attempting to go ashore, was thrust back by the agents of the defendants, and was forcibly prevented from going on shore, until after a detention of about two hours; that at the suggestion of the clerk, that if the plaintiff had anything valuable he might leave it as security for his fare and go ashore, he left his watch as security with the clerk, and then was permitted to go on shore; that thereupon he went ashore, changed a ten dollar bill he had, and afterwards, within a few minutes, returned and paid the clerk the four dollars under protest, and redeemed his watch; and that he had more than money enough, at the time, to pay the fare.

" There was also evidence tending to show that the plaintiff, on the four dollars being demanded of him, not only said he was not

able to pay his fare again, but that he had not the money, the evidence being conflicting whether he stated that he was not able to pay and had not the money, or whether he stated merely that he was not able to pay again. There was also evidence tending to show certain circumstances which occurred during the detention of the plaintiff on the boat, and which, he contended, were circumstances of aggravation, which the jury were authorized and it was their duty to consider in estimating the damages.

" The defendants offered evidence tending to show that their rules and practice at the time in question, and for many years before, required each passenger to deliver up his boat ticket on leaving the boat, on her arrival, (but there was no other evidence that these rules and practices were made known to the plaintiff;) that the regular fare from Fall River to New York, by the boat, was four dollars; that the clerk, in putting the number of the berth on the ticket, did so by writing it with a lead pencil; that it was impracticable to collect tickets at any other time than upon arrival; that frequently at Fall River passengers came on board accompanied by relatives or friends, who would select state rooms for them; that it was impracticable to require all persons to purchase tickets before coming on board, or to collect tickets during the passage, as it was a night passage, and an unreasonable annoyance to passengers to enter their state rooms to collect tickets, and examine how many persons were in each state room; that it was a common occurrence on the boats of the defendants, for people to claim that they had lost their tickets; that such a ticket as the plaintiff claimed to have had, was good to any other person presenting it for a passage at any time, and was received as good by the defendants; that, when such tickets were presented to the defendants, at their offices, four dollars were paid to the holder, if he desired it, and the defendants were satisfied he was such without fraud; and that the defendants committed no assault on the plaintiff, except to put out the hand and tell him he could not pass till he showed his ticket, or paid his fare.

" The plaintiff requested the judge to rule that the defendants had no right to detain him on board of the boat against his will, or prevent his leaving it after having once purchased and paid for

his ticket if he had lost it, and so could not give it up, nor for the reason that he did not produce evidence satisfactory to the defendants' agents that such were the facts, nor even if he was fraudulently trying to get his passage without a ticket, and without paying the fare ; and that the fact of the defendants' agents detaining the plaintiff and taking the fare from him was conclusive evidence that the defendants detained him for the purpose of compelling him to pay the fare.

" The judge declined so to rule, and ruled, among other things not excepted to, that the defendants' contract with passengers was not only to carry them, but for good treatment to them ; that if the plaintiff did buy tickets at the station of the Old Colony & Newport Railway in Boston for a passage from Boston to Philadelphia, among which was a ticket for a passage from Fall River to New York, it was his duty, if he knew that he was to give up the boat ticket before leaving the boat, to deliver it to the proper officer of the boat, upon proper demand made upon him therefor by the proper officer, or to pay the fare ; that if the plaintiff had lost his ticket, it would be his own loss, and not one which the defendants were to bear ; that the law gave the defendants a lien on the baggage of the plaintiff, but not on his person ; that they had no right to detain him till he did pay his fare or give up a ticket, or to compel him to pay his fare or give up a ticket ; but that if he knew that he was to give up his ticket before leaving the boat, the defendants had a right, if he did not give it up or pay his fare, to detain him for a reasonable time to investigate on the spot the circumstances of his case, and, if the jury found that the defendants detained him for the purpose of compelling him to pay his fare or to give up his ticket, or detained him for the purpose of investigating his case for an unreasonable time, or in an unreasonable way, he was entitled to recover.

" The judge also ruled that the detaining the plaintiff and taking the four dollars from him was evidence, but not conclusive evidence, that he was detained for the purpose of compelling the payment, and gave other rulings applicable to the case not excepted to, except as herein stated. The jury returned a verdict for the plaintiff for $50.

" To the rulings given, and the refusals to rule as requested, the plaintiff alleged exceptions."

*J. F. Barrett*, for the plaintiff. 1. There was no evidence tending to prove that the plaintiff knew he was to give up the ticket before leaving the boat. *Maroney* v. *Old Colony & Newport Railway Co.* 106 Mass. 153.

2. The defendants had no right forcibly to detain the plaintiff at all " to investigate on the spot the circumstances of his case." *Newton* v. *Trigg*, 1 Show. 268. *Sunbolf* v. *Alford*, 3 M. & W. 248. *Rohan* v. *Sawin*, 5 Cush. 281. *Hall* v. *Booth*, 3 Nev. & Man. 316. *Chilton* v. *London & Croydon Railway Co.* 16 M. & W. 212.

3. Forcibly detaining the plaintiff, and demanding and taking his fare, as the condition of letting him go ashore, was conclusive on the defendants that they detained him for the purpose of compelling him to pay his fare. *Dewey* v. *Field*, 4 Met. 381. *Hall* v. *Huse*, 10 Mass. 39 note. 1 Greenl. Ev. (12th ed.) § 205 note.

4. It was not the duty of the plaintiff to pay his fare over again. *Chilton* v. *London & Croydon Railway Co.* 16 M. & W. 212. *Ripley* v. *New Jersey Railroad & Transportation Co.* 2 Vroom, 388.

5. Even if the plaintiff was liable to pay his fare over again, it was not his duty to pay while he was under duress. *Tilley* v. *Damon*, 11 Cush. 247.

6. If the plaintiff lost his ticket under the circumstances in evidence, it would not be his own loss.

*J. D. Ball*, for the defendants, cited *Commonwealth* v. *Power*, 7 Met. 596 ; *O'Brien* v. *Boston & Worcester Railroad Co.* 15 Gray, 20 ; *Vinton* v. *Middlesex Railroad Co.* 11 Allen, 304 ; *Jencks* v. *Coleman*, 2 Sumn. 221 ; *Ripley* v. *New Jersey Railroad & Transportation Co.* 2 Vroom, 388 ; *Hibbard* v. *New York & Erie Railroad Co.* 15 N. Y. 455 ; *Willetts* v. *Buffalo & Rochester Railroad Co.* 14 Barb. 585 ; *Northern Railroad Co.* v. *Page*, 22 Barb. 130 ; *State* v. *Overton*, 4 Zab. 435, 441 ; Pierce on Railroads, 490.

CHAPMAN, C. J.    The jury having found a verdict for the plaintiff for $50, he excepts to all the rulings of the judge who tried the cause, and to his refusals to rule.

1. He contends that it should not have been left to the jury to find whether the plaintiff knew he was to give up the boat ticket before leaving the boat, because there was no evidence whatever tending to prove such knowledge. But from the manner in which passengers purchase tickets, and the use necessary to be made of them, any person of ordinary intelligence would infer that they are to be given up on the boat to some officer, and as they had not been called for earlier, he would naturally suppose that they would be called for at the time of leaving the boat. Whether the plaintiff knew it was a question for the jury, under the circumstances of the case.

2. He contends that the defendants had no right forcibly to detain the plaintiff at all for the purpose of investigating on the spot the circumstances of the case. As passenger carriers the defendants had a right to make reasonable rules and regulations. It would be obviously reasonable to require passengers to purchase tickets at the office before the boat started, instead of taking money on board, and to give up these tickets at the end of the voyage while passengers were leaving the boat. If a passenger should attempt to leave without producing a ticket, and should allege that he had lost it, they would need to investigate the matter, and to ascertain the reason of his conduct, and to make reasonable provision for their own security. The ruling requested that they had no right to detain him, even if he was fraudulently trying to get his passage without a ticket and without paying the fare, was properly refused. The ruling was proper that if the plaintiff lost his ticket it would be his own loss, and not one which the defendants were to bear; and it was sufficiently favorable to the plaintiff to rule " that they had no right to detain him till he did pay his fare or give up a ticket, or to compel him to pay his fare or give up a ticket; but that if he knew that he was to give up his ticket before leaving the boat, the defendants had a right, if he did not give it up or pay his fare, to detain him for a reasonable time to investigate on the spot the circumstances of his case; and if the jury found that the defendants detained him for the purpose of compelling him to pay his fare or to give up his ticket, or detained him for the pur-

pose of investigating his case for an unreasonable time, or in an unreasonable way, he was entitled to recover." Under this ruling the jury found for the plaintiff. As he had sufficient money to pay his fare, as it was his duty to do, he himself was the unnecessary cause of his own detention for two hours, and the damages found by the jury seem to be ample. Upon the ruling and verdict, the other points insisted upon in the plaintiff's brief become immaterial.                    *Exceptions overruled.*