BESSIE JACQUES *vs.* CHILDS DINING HALL COMPANY.

Essex.    January 16, 1923. — March 28, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*False Imprisonment.    Restaurant.*

If, at the trial of an action of tort for false imprisonment against the owner of a restaurant by a patron who has been detained in the restaurant by employees of the defendant, pending an investigation of the accuracy of his statement, made after he had paid in full all just charges for food eaten by him and was leaving the restaurant, that a guest accompanying him had eaten nothing so that no check for food was issued to and no payment was due from the guest, there was evidence that such detention lasted for about half an hour entirely because of the inattention and carelessness of the defendant's cashier, it was a question of fact for the jury whether such detention, in all the circumstances, was unreasonable or for an unreasonable time, and, since it might have been found to have been unreasonable or for an unreasonable time, a verdict for the plaintiff was warranted.

TORT against the Childs Dining Hall Company for alleged false imprisonment of the plaintiff.    Writ dated July 19, 1917.

In the Superior Court, the action was tried before *Quinn,* J. Material evidence is described in the opinion.    At the close of the evidence, the defendant moved that a verdict be ordered in its favor.    The motion was denied.    The jury returned a verdict for the plaintiff in the sum of $275; and the defendant alleged exceptions.

*F. H. Smith, Jr., (N. N. Jones* with him,) for the defendant.

*E. C. Jacobs,* for the plaintiff.

BRALEY, J.    This is an action of tort for alleged false imprisonment.    The defendant at the close of the evidence moved for a directed verdict.    The motion was denied and the jury having found for the plaintiff the case is before us on exceptions to the ruling.    The law is well settled that "Any general restraint is sufficient to constitute an imprisonment; and though this be effected without actual contact of the person, it will be presumptively actionable," and "Any demonstration of physical power which, to all appearances, can be avoided only by submission, operates as effectually to constitute an imprisonment, if submitted to, as if any amount of force had been exercised."    "If a man is

restrained of his personal liberty by fear of a personal difficulty, that amounts to a false imprisonment" within the legal meaning of such term. *Commonwealth* v. *Nickerson,* 5 Allen, 518, 525, 526. *Miller* v. *Ashcraft,* 98 Ky. 314, 318. *Palmer* v. *Maine Central Railroad,* 92 Maine, 399. *McCarthy* v. *De Armit,* 99 Penn. St. 63. *McAleer* v. *Good,* 216 Penn. St. 473. *Smith* v. *State,* 7 Humph. 43. *Gillingham* v. *Ohio River Railroad,* 35 W. Va. 588, 595. *Bird* v. *Jones,* 7 Q. B. 742, 753, 754. Bigelow on Torts, (8th ed.) 340. The question for decision accordingly is whether as matter of law there was any evidence which warranted the verdict. It may be assumed, indeed it is not denied, that the plaintiff knew that she must pay for her luncheon before leaving the restaurant, and the defendant undoubtedly had the right if apparently she had not paid to detain her for a reasonable time to investigate the circumstances. But if she was detained for an unreasonable time or in an unreasonable way she is entitled to recover. *Standish* v. *Narragansett Steamship Co.* 111 Mass. 512, 517, 518. *Robinson* v. *Balmain New Ferry Co. Ltd.* [1910] A. C. 295. The jury on the plaintiff's testimony could properly find that accompanied by her aunt she entered the defendant's restaurant between four and six o'clock in the afternoon for the purpose of being served with food although the aunt "did not wish for anything to eat." The "restaurant was very crowded," and they went "up one flight of stairs to the ladies' waiting room, on the balcony." The plaintiff went downstairs and sat at a table where she was served and the waiter presented her with a check the amount of which was small. Upon receiving the check she returned to her aunt and taking her by the arm they passed to the front of the restaurant to the cashier's desk where she stopped and paid her check and with her aunt started toward the door. It is evident that having made payment of the defendant's demand she had the unqualified right to leave the premises without any restraint being imposed on her freedom of departure. But after the payment, and while proceeding toward the door, "their attention was attracted by the ringing of a bell, . . . and the cashier motioned for the plaintiff to come back," and the plaintiff and her aunt returned to the desk when the cashier asked the plaintiff "if her aunt was with her and she answered 'Yes.'" The cashier said, "Why has she no check, your check just pays for one." The plaintiff replied, "She does n't

have any check because she did n't eat," and they again "started to go out." "The cashier said 'Wait,'" and called the headwaiter who appeared, and asked "the plaintiff what the matter was," and upon being informed by the plaintiff of the situation substantially as described to the cashier, the headwaiter said "Come with me." The plaintiff, her aunt and the headwaiter thereupon went to the rear of the restaurant where the plaintiff was asked if "she could recognize the person who waited on her," and she said she thought she could. When the waiter appeared and was identified by the plaintiff the headwaiter asked, "What did she have to eat, and was she alone?" The reply was, "Yes, I remember she was all alone," and enumerated "what the plaintiff had to eat." But upon referring to the check which the waitress had, he said " . . . that is not my check." In reply to the question asked by the waitress "Where did you get this check?" the plaintiff answered, "Why it is the only check I have, the check they gave me when I got through eating." To the further statement by the waitress, "But it is not his (the waiter's) check, it is a different number . . . How do you account for that?" the reply was, "I don't attempt to account for it, all I know is he, the waiter, says I ate twenty or thirty cents' worth, that is the only check I saw and I went out and paid for it." A further conversation of a few minutes followed when the waitress said "Come with me," and "they went to the front part of the restaurant near the cashier's desk," and the waitress told the plaintiff "'Wait here.' I stood there and she called a man," who could be found to have been the defendant's "manager." While the plaintiff was explaining the circumstances to the manager "the cashier . . . came over with another check and said, 'I think I must have mixed the checks up, I think this is the correct check.'" The manager took the check, looked at it, and said to the plaintiff "You may go now," and the plaintiff after a delay of twenty-five or thirty minutes from the time when the check was paid left the restaurant. The jury if they so determined further could find that beginning with the ringing of the bell to the time when the manager said, "You may go now" the plaintiff was under investigation to ascertain whether she was evading payment, and if no payment had been made, she would not be permitted to depart until a settlement had been effected. It is obvious that no criminal offence had been committed, and "the

right appertaining to private individuals to arrest without a warrant, . . . is confined to cases of the actual guilt of the party arrested; and the arrest can only be justified by proving such guilt." *Rohan* v. *Sawin,* 5 Cush. 281, 285. *Commonwealth* v. *Phelps,* 209 Mass. 396, 404. The defendant must be held to have intended the result of the acts of its servants. *Mason* v. *Jacot,* 235 Mass. 521. "When one has done an act unaccompanied by circumstances which justify its commission, it is a principle of law that he intended to produce the consequences which have ensued." *Commonwealth* v. *Nickerson,* 5 Allen, 518, 527. It is argued that there was no interference with her "freedom of locomotion," that the detention was lawful, and she voluntarily remained. But her honesty and veracity had been openly and repeatedly challenged. If she had gone out before exoneration, her departure well might have been interpreted by the lookers on as an admission of guilt, or of circumstances from which guilt might be inferred. The situation was in the control of the defendant. The restraint or duress imposed by the mode of investigation, which has been described at length, the jury could say was for the accomplishment of the defendant's purpose, even if no threats of public exposure or of arrest were made, and no physical restraint of her person was attempted. *Silsbee* v. *Webber,* 171 Mass. 378. *Stevens* v. *Thissell,* 240 Mass. 541. It therefore was a question of fact whether the plaintiff's detention, caused solely by the inattention and carelessness of the cashier, was under all the circumstances unreasonable, or for an unreasonable time. *Standish* v. *Narragansett Steamship Co.* 111 Mass. 512. The motion was denied rightly, and the case having been submitted to the jury under full and clear instructions to which the defendant did not except, the entry must be exceptions overruled.

*So ordered.*