MARIUS S. COBLYN *vs.* KENNEDY'S, INC. & another.

Suffolk.   March 4, 1971. — April 15, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*False Imprisonment. Store. Probable Cause. Words,* "Reasonable grounds,"
"Probable cause."

In an action for false imprisonment against the proprietor of a clothing
store and its employee, evidence that just as the plaintiff came out of
the store wearing an ascot the employee with his hand up said "Stop.
Where did you get that scarf?" and that, upon the plaintiff's asking
"Why?" the employee then firmly grasped the plaintiff's arm and told
him that he had "better go back and see the manager," that another
employee was at the plaintiff's side and other people were standing
around, and that the plaintiff was an elderly man with a heart condi-
tion, warranted a finding that he had been subjected to restraint
sufficient to constitute imprisonment. [320–322]

The words "reasonable grounds" and "probable cause" have traditionally
been accorded the same meaning. [323–325]

Whether, within G. L. c. 231, § 94B, a representative of a store had
"reasonable grounds to believe" that one detained by him was com-
mitting or attempting to commit larceny of goods from the store must
be determined by the objective standard of a reasonably prudent
person, not by a subjective standard. [326]

In an action for false imprisonment against the proprietor of a clothing
store and its employee who detained the plaintiff for questioning as he
came out of the store, conclusions that the employee then had "rea-
sonable grounds to believe" that the plaintiff was committing or
attempting to commit larceny of an ascot from the store within the
meaning of that phrase in G. L. c. 231, § 94B, and that the defendants
were entitled to the defense set forth therein, were not warranted where
it appeared merely that when the plaintiff, an elderly man, came out
of the store he was wearing a hat and a topcoat, a woolen shirt "open
at the neck," and the ascot around his neck the knot of which was
visible. [326]

TORT. Writ in the Superior Court dated June 24, 1965.
The action was tried before *Roy,* J.

*Thomas R. Morse, Jr.,* for the defendants.

*Sumner Z. Kaplan* (*Julian Soshnick* with him) for the
plaintiff.

SPIEGEL, J.   This is an action of tort for false imprison-
ment.[1]   At the close of the evidence the defendants filed
a motion for directed verdicts which was denied.   The
jury returned verdicts for the plaintiff in the sum of
$12,500.   The case is here on the defendants' exceptions to
the denial of their motion and to the refusal of the trial
judge to give certain requested instructions to the jury.

We state the pertinent evidence most favorable to
the plaintiff.   On March 5, 1965, the plaintiff went to
Kennedy's, Inc. (Kennedy's), a store in Boston.   He was
seventy years of age and about five feet four inches in
height.   He was wearing a woolen shirt, which was "open
at the neck," a topcoat and a hat.   "[A]round his neck"
he wore an ascot which he had "purchased . . . previously
at Filenes."   He proceeded to the second floor of Kennedy's
to purchase a sport coat.   He removed his hat, topcoat
and ascot, putting the ascot in his pocket.   After purchas-
ing a sport coat and leaving it for alterations, he put on
his hat and coat and walked downstairs.   Just prior to
exiting through the outside door of the store, he stopped,
took the ascot out of his pocket, put it around his neck, and
knotted it.   The knot was visible "above the lapels of his
shirt."   The only stop that the plaintiff made on the first
floor was immediately in front of the exit in order to put
on his ascot.

Just as the plaintiff stepped out of the door, the defend-
ant Goss, an employee, "loomed up" in front of him with
his hand up and said: "Stop.   Where did you get that
scarf?"   The plaintiff responded, "[W]hy?"   Goss firmly
grasped the plaintiff's arm and said: "[Y]ou better go
back and see the manager."   Another employee was stand-
ing next to him.   Eight or ten other people were standing
around and were staring at the plaintiff.   The plaintiff
then said, "Yes, I'll go back in the store" and proceeded
to do so.   As he and Goss went upstairs to the second floor,

[1] Although there were several other counts in the original and amended
declarations we are here concerned with only two counts: one against
Kennedy's, Inc. and the other against one Gerald Goss.

the plaintiff paused twice because of chest and back pains. After reaching the second floor, the salesman from whom he had purchased the coat recognized him and asked what the trouble was. The plaintiff then asked: "[W]hy 'these two gentlemen stop me?' " The salesman confirmed that the plaintiff had purchased a sport coat and that the ascot belonged to him.

The salesman became alarmed by the plaintiff's appearance and the store nurse was called. She brought the plaintiff into the nurse's room and gave him a soda mint tablet. As a direct result of the emotional upset caused by the incident, the plaintiff was hospitalized and treated for a "myocardial infarct."

Initially, the defendants contend that as a matter of law the plaintiff was not falsely imprisoned. They argue that no unlawful restraint was imposed by either force or threat upon the plaintiff's freedom of movement. *Wax* v. *McGrath*, 255 Mass. 340, 342. However, "[t]he law is well settled that '[a]ny general restraint is sufficient to constitute an imprisonment . . .' and '[a]ny demonstration of physical power which, to all appearances, can be avoided only by submission, operates as effectually to constitute an imprisonment, if submitted to, as if any amount of force had been exercised.' 'If a man is restrained of his personal liberty by fear of a personal difficulty, that amounts to a false imprisonment' within the legal meaning of such term." *Jacques* v. *Childs Dining Hall Co.* 244 Mass. 438, 438–439.

We think it is clear that there was sufficient evidence of unlawful restraint to submit this question to the jury. Just as the plaintiff had stepped out of the door of the store, the defendant Goss stopped him, firmly grasped his arm and told him that he had "better go back and see the manager." There was another employee at his side. The plaintiff was an elderly man and there were other people standing around staring at him. Considering the plaintiff's age and his heart condition, it is hardly to be expected that with one employee in front of him firmly grasping

his arm and another at his side the plaintiff could do other than comply with Goss's "request" that he go back and see the manager. The physical restraint imposed upon the plaintiff when Goss grasped the plaintiff's arm readily distinguishes this case from *Sweeney* v. *F. W. Woolworth Co.* 247 Mass. 277, relied upon by the defendants.

In addition, as this court observed in the *Jacques* case, *supra*, at p. 441, the "honesty and veracity [of the plaintiff] had been openly . . . challenged. If she had gone out before . . . [exonerating herself], her departure well might have been interpreted by the lookers on as an admission of guilt, or of circumstances from which guilt might be inferred. The situation was in the control of the defendant. The restraint or duress imposed by the mode of investigation . . . the jury could say was for the accomplishment of the defendant's purpose, even if no threats of public exposure or of arrest were made, and no physical restraint of . . . [the plaintiff] was attempted." For cases in other jurisdictions, where the evidence tended to support the tort of false imprisonment, see *Clark* v. *Kroger Co.* 382 F. 2d 562, 563 (7th Cir.); *Patrick* v. *Esso Standard Oil Co.* 156 F. Supp. 336, 340 (D. N. J.); *Daniel* v. *Phillips Petroleum Co.* 229 Mo. App. 150, 155; *Lukas* v. *J. C. Penney Co.* 233 Ore. 345, 354.

The defendants next contend that the detention of the plaintiff was sanctioned by G. L. c. 231, § 94B, inserted by St. 1958, c. 337. This statute provides as follows: "In an action for false arrest or false imprisonment brought by any person by reason of having been detained for questioning on or in the immediate vicinity of the premises of a merchant, if such person was detained in a reasonable manner and for not more than a reasonable length of time by a person authorized to make arrests or by the merchant or his agent or servant authorized for such purpose and if there were reasonable grounds to believe that the person so detained was committing or attempting to commit larceny of goods for sale on such premises, it shall be a defence to such action. If such goods had not been purchased and

were concealed on or amongst the belongings of a person so detained it shall be presumed that there were reasonable grounds for such belief."

The defendants argue in accordance with the conditions imposed in the statute that the plaintiff was detained in a reasonable manner for a reasonable length of time and that Goss had reasonable grounds for believing that the plaintiff was attempting to commit larceny of goods held for sale.

It is conceded that the detention was for a reasonable length of time. See *Proulx* v. *Pinkerton's Natl. Detective Agency, Inc.* 343 Mass. 390, 392–393. We need not decide whether the detention was effected in a reasonable manner for we are of opinion that there were no reasonable grounds for believing that the plaintiff was committing larceny and, therefore, he should not have been detained at all. However, we observe that Goss's failure to identify himself as an employee of Kennedy's and to disclose the reasons for his inquiry and actions, coupled with the physical restraint in a public place imposed upon the plaintiff, an elderly man, who had exhibited no aggressive intention to depart, could be said to constitute an unreasonable method by which to effect detention. See *Lukas* v. *J. C. Penney Co.* 233 Ore. 345, 352, 360.

The pivotal question before us as in most cases of this character is whether the evidence shows that there were reasonable grounds for the detention. At common law in an action for false imprisonment, the defence of probable cause, as measured by the prudent and cautious man standard, was available to a merchant. *Standish* v. *Narragansett S.S. Co.* 111 Mass. 512, 517. *Jacques* v. *Childs Dining Hall Co.* 244 Mass. 438, 439. *Muniz* v. *Mehlman*, 327 Mass. 353, 358.[2] In enacting G. L. c. 231, § 94B, the Legislature inserted the words, "reasonable grounds." Historically, the words "reasonable grounds" and "probable

---

[2] See *Carroll* v. *United States*, 267 U. S. 132, 161, where Chief Justice Taft, speaking for the majority of a divided court, said: "The necessity for probable cause in justifying seizures on land or sea, in making arrests without warrant for past felonies, and in malicious prosecution and false imprisonment cases has led to frequent definition of the phrase."

cause" have been given the same meaning by the courts. In the case of *United States* v. *Walker*, 246 F. 2d 519, 526 (7th Cir.) it was said: " 'Probable cause' and 'reasonable grounds' are concepts having virtually the same meaning." The following cases have expressly stated that the words may be used interchangeably and without distinction. *Draper* v. *United States*, 358 U. S. 307, 310. *United States* v. *Vasquez*, 183 F. Supp. 190, 193 (E.D.N.Y.). *Smallwood* v. *Commonwealth*, 305 Ky. 520, 524. *McKeon* v. *National Cas. Co.* 216 Mo. App. 507, 524. *Adams* v. *State*, 137 Tex. Cr. 43, 46. *Stelloh* v. *Liban*, 21 Wis. 2d 119, 125. In the case of *Lukas* v. *J. C. Penney Co., supra*, at p. 361, the Oregon Supreme Court construed the meaning of the words "reasonable grounds" in its "shoplifting statute" as having the same meaning as they have in a statute authorizing arrest without a warrant and applied the probable cause standard to the facts before it.

The defendants assert that the judge improperly instructed the jury in stating that "grounds are reasonable when there is a basis which would appear to the reasonably prudent, cautious, intelligent person." In their brief, they argue that the "prudent and cautious man rule" is an objective standard and requires a more rigorous and restrictive standard of conduct than is contemplated by G. L. c. 231, § 94B. The defendants' requests for instructions, in effect, state that the proper test is a subjective one, viz., whether the defendant Goss had an honest and strong suspicion that the plaintiff was committing or attempting to commit larceny.[3]

---

[3] The bill of exceptions recites that "[t]he defendants duly excepted to the failure of the Court to give their requested instructions 1, 2 and 3." These requests are as follows: "1. If the defendant Goss had a belief to the extent of an honest and strong suspicion that the plaintiff had committed larceny or was attempting to commit larceny of goods for sale on Kennedy's premises, the jury should find that he acted reasonably. . . .   2. If the jury find the ascot . . . was concealed on or amongst the belongings of the plaintiff, they must find that the defendants had reasonable grounds to believe that larceny had been attempted or committed.   3. If the jury find that the defendant Goss reasonably suspected the plaintiff of theft or failing to pay for goods belonging to Kennedy's, they must return verdicts for the defendants on all counts."

The defendants' brief refers only to request No. 1 although their argument appears to touch on the periphery of the remaining two requests.

We do not agree. As we have attempted to show, the words "reasonable grounds" and "probable cause" have traditionally been accorded the same meaning. In the case of *Terry* v. *Ohio*, 392 U. S. 1, involving the question whether a police officer must have probable cause within the Fourth Amendment to "stop-and-frisk" a suspected individual, the Supreme Court of the United States held that the "probable cause" requirement of the Fourth Amendment applies to a "stop-and-frisk" and that a "stop-and-frisk" must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? . . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." Pp. 21–22.

If we adopt the subjective test as suggested by the defendants, the individual's right to liberty and freedom of movement would become subject to the "honest . . . suspicion" of a shopkeeper based on his own "inarticulate hunches" without regard to any discernible facts. In effect, the result would be to afford the merchant even greater authority than that given to a police officer. In view of the well established meaning of the words "reasonable grounds" we believe that the Legislature intended to give these words their traditional meaning. This seems to us a valid conclusion since the Legislature has permitted an individual to be detained for a "reasonable length of time." This would be at least analogous to a "stop" within the meaning of the *Terry* case.[4]

---

[4] See *Terry* v. *Ohio, supra,* at p. 19, where the Supreme Court rejects "the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest.'" At p. 19, fn. 16, the court states that "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

We also note that the *Terry* case allows "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he

· We also note that an objective standard is the criterion for determining probable cause or reasonable grounds in malicious prosecution and false arrest cases. *Bacon · v. Towne*, 4 Cush. 217, 238–239. *Wax* v. *McGrath*, 255 Mass. 340, 343. We see no valid reason to depart from this precedent in regard to cases involving false imprisonment.

· Applying the standard of reasonable grounds as measured by the reasonably prudent man test [5] to the evidence in the instant case, we are of opinion that the evidence warranted the conclusion that Goss was not reasonably justified in believing that the plaintiff was engaged in shoplifting. There was no error in denying the motion for directed verdicts and in the refusal to give the requested instructions.

*Exceptions overruled.*

has probable cause to arrest the individual for a crime." Even in such circumstances, however, the court said that "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." P. 27.

[5] The test for determining probable cause or reasonable grounds was established long ago in *Bacon* v. *Towne, supra,* at pp. 238–239, where Chief Justice Shaw wrote: "Probable cause is *such a state of facts* . . . as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty" (emphasis supplied).

We also note here that the defendants incorrectly rely on certain language in the case of *Pihl* v. *Morris*, 319 Mass. 577, 580, to support their argument that only "an honest and strong suspicion" is needed rather than "reasonable grounds." That case states that " 'an honest and strong suspicion' is a necessary *part of probable cause"* (emphasis supplied).