Richard D. LEWIS, Plaintiff,

v.

The CITY OF BOSTON,
et al., Defendants.

Civ. A. No. 91–10093–T.

United States District Court,
D. Massachusetts.

Aug. 3, 1993.

Jeffrey C. Coniaris, Boston, MA, for plaintiff.

Stephen C. Pfaff, Merrick & Louison, William J. Walsh, Asst. Corp. Counsel, City of Boston Law Dept., Boston, MA, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

This civil rights action arises out of the arrest and eight-day detention of plaintiff, Richard D. Lewis. Presently before the court are plaintiff's motion to amend his complaint and dispositive motions filed by defendants.

## I.

## BACKGROUND

In the early-morning hours of January 12, 1988, Boston Police Officers Patrick Butler and Paul Donovan received a call over their radio that an individual suspected of illegally possessing a handgun had been observed fleeing on foot from Washington Street toward Tremont Street. The suspect was described as a black male, approximately six feet tall, wearing dark clothing. Officers Butler and Donovan responded to the call by driving their police cruiser toward the area in question.

Shortly thereafter, the officers spotted plaintiff, Richard D. Lewis, proceeding on foot into Sparrow Park. Determining that Lewis fit the description of the suspect they were pursuing, they approached him, got out of the cruiser and informed him of the reason he was being stopped. A frisk conducted by Officer Butler revealed that Lewis was carrying a spring-loaded bludgeon (a retractable billy club) in a holder attached to his belt, but no handgun. Lewis, who lived nearby on West Newton Street, told the officers that he was returning home from work at Independent Taxi Operators Association.

Cooperating fully with the investigation, Lewis produced his driver's license. The officers then radioed Lewis' name, date of birth and race into the station. They were subsequently told that Lewis was wanted on two outstanding default warrants. Relying on this information, the officers placed Lewis under arrest and brought him back to the Area D Police Station. A telephone call to the warrant unit confirmed the existence of two outstanding warrants for an individual by the name of Richard Lewis. Despite his insistence that a mistake had been made, Lewis was booked, placed in a cell and held overnight.

In the morning, Lewis appeared (without counsel) before a Boston Municipal Court judge. Satisfied that Lewis was the same Richard Lewis named in the default warrants, the judge ordered him held for ten days without bail. Lewis was then brought to the Charles Street Jail, where he was incarcerated for one week before being released on personal recognizance.

During three subsequent appearances before the West Roxbury District Court, Lewis was unable to convince the authorities that he was not the same Richard Lewis described in the warrants. Finally, a fingerprint comparison was conducted and Lewis' claim of mistaken identity was vindicated. All charges against him were dropped.

In January of 1991, Lewis commenced this action pursuant to 42 U.S.C. § 1983, alleging that his arrest and eight-day detention had violated his constitutional rights. His complaint names the following defendants: Patrick Butler, the arresting officer; Donald Holland, the arraigning officer; the City of Boston; Mayor Raymond L. Flynn; and Police Commissioner Francis M. Roache.[1]

Officers Butler and Holland have moved for the entry of summary judgment in their favor. The City of Boston, Mayor Flynn and Commissioner Roache have moved to dismiss Lewis' complaint for failure to state a claim against them. Lewis has filed a motion to amend his complaint. The court will address these motions *seriatim*.

## II.

### THE MOTION TO AMEND

Plaintiff seeks leave to amend his complaint in order to add a claim of negligence under the Massachusetts Tort Claims Act (the "Act"), Mass.Gen.L. ch. 258, § 2.[2] Defendants oppose this motion, claiming that plaintiff failed to comply with the Act's presentment requirement.

In relevant part, the Act provides:

A civil action shall not be instituted against a public employer on a claim for damages . . . unless the claimant shall have first presented his claim in writing to the

---

1. Lewis' complaint also names Officer Donovan, two unidentified detectives, three court-appointed attorneys and other named and unnamed individuals as defendants. However, because the docket indicates that none of these individuals were ever served process, the court does not consider them parties to this action.

2. Subject to certain limitations and exceptions, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment...." Mass.Gen.L. ch. 258, § 2. A municipality may be held liable under this provision for the negligence of one of its police officers. *See Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir.1991).

executive officer of such public employer *within two years after the date upon which the cause of action arose,* and such claim shall have been finally denied by such executive officer in writing. . . .

Mass.Gen.L. ch. 258, § 4 (emphasis added).[3] Massachusetts courts have required strict compliance with this statute, rejecting notions of constructive notice. *See, e.g., Pickett v. Commonwealth,* 33 Mass.App.Ct. 645, 604 N.E.2d 43 (1992), *review denied,* 414 Mass. 1103, 609 N.E.2d 88 (1993). *See also Fearon v. Commonwealth,* 394 Mass. 50, 53, 474 N.E.2d 162, 165 (1985) ("Unless exempted from the requirements of G.L. c. 258 by statute . . ., we believe all actions based on such claims should be subject to the presentment requirement as stated in § 4.").

Faced with conflicting affidavits submitted by the parties, the court held an evidentiary hearing to determine whether plaintiff's claim had, in fact, been presented as required by the Act. The testimony proffered at that hearing,[4] coupled with the withdrawal of the affidavit of plaintiff's former attorney, leads the court to conclude that no claim, timely or otherwise, was presented to the City of Boston by or on behalf of plaintiff. Accordingly, plaintiff's motion to amend his complaint must be denied.

### III.

### THE MOTION FOR SUMMARY JUDGMENT

■ Officers Butler and Holland move for summary judgment on the ground that they are entitled to the defense of qualified immunity. Notwithstanding the potential of this defense to "create strange procedural configurations," *Amsden v. Moran,* 904 F.2d 748, 752 (1st Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991),

its invocation does not warrant abandonment of the usual summary judgment framework. *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Accordingly, *brevis* disposition is appropriate here if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under the general rule of qualified immunity announced by the Supreme Court,

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[5] "Th[is] . . . standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 1097, 1096, 89 L.Ed.2d 271 (1986)).

In analyzing the defense of qualified immunity in this case, the court's first task is to ascertain whether plaintiff has alleged, with sufficient particularity, that Officers Butler and Holland violated his clearly established constitutional rights. *See Siegert v. Gilley,* — U.S. —, —, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (clarifying analytical structure under which qualified immunity claims should be addressed). A right is deemed "clearly established" if its contours are "sufficiently clear that a reasonable offi-

---

3. In the case of a city, presentment of a claim is deemed sufficient if made upon the mayor, the city manager, the city solicitor or the city clerk. Mass.Gen.L. ch. 258, § 4.

4. Counsel for defendants called to the stand an employee of the City Clerk's Office and an employee of the Mayor's Office, each of whom testified that he had been unable to find any record of a claim filed by or on behalf of plaintiff. Counsel for plaintiff neither cross-examined

these witnesses nor called his own witnesses to rebut their testimony.

5. "The law provides immunity for such reasonable errors because 'officials should not err always on the side of caution' out of a fear of civil suit." *Rivera v. Murphy,* 979 F.2d 259, 263 n. 1 (1st Cir.1992) (quoting *Davis v. Scherer,* 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984)).

cial would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Although plaintiff makes reference to a number of constitutional provisions in his complaint,[6] the court understands his central claims to implicate the Fourth Amendment's guarantee against unreasonable searches and seizures, which has been made applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. *See Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). It cannot be gainsaid that this guarantee was well established at the time of plaintiff's arrest and detention. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *See also Wagenmann v. Adams*, 829 F.2d 196, 209 (1st Cir.1987) ("The right to be free from unreasonable seizures of the person was well established long before 1976."); *Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir. 1985) ("It can hardly be debated that [plaintiff] had, in 1977, a 'clearly established' Fourth Amendment right to be free of unreasonable searches."). It remains to determine whether Officers Butler and Holland reasonably should have known that their treatment of plaintiff violated these clearly established rights.

## A. *The Stop and Search*

The question of whether a police officer has reasonable grounds to stop and search an individual "falls directly within the Fourth Amendment's proscription against unreasonable searches and seizures." *United States v. Walker*, 924 F.2d 1, 3 (1st Cir.1991). To justify a particular intrusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In assessing the reasonableness of a *Terry* stop, "the court must first consider whether the officer's action was justified at its inception; and, second, whether the

action taken was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Stanley*, 915 F.2d 54, 55 (1st Cir.1990) (citations omitted).

■ Determining whether a police officer's action "was justified at its inception depends on the totality of the circumstances confronting the officer." *United States v. Trullo*, 809 F.2d 108, 111 (1st Cir.), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). The record in this case reveals that at the time Officer Butler spotted plaintiff, he and his partner had just received a radio call informing them that an individual suspected of possessing an illegal firearm had been pursued by another officer toward the same area. *Cf. United States v. Maguire*, 918 F.2d 254, 258 (1st Cir.1990) (in which chain of circumstances culminating in arrests began with officer's hearing of armed robbery on police radio), *cert. denied*, —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991). Although plaintiff's mere presence in that area was probably insufficient to justify his being stopped, *see Stanley*, 915 F.2d at 56, the late hour and the fact that he fit the general description of the suspect provided a reasonable basis for Officer Butler's decision to approach him.

■ With respect to the subsequent search of plaintiff's person, it is clear that Officer Butler need not have been absolutely certain that plaintiff was armed. "[T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Given Officer Butler's reasonable suspicion that plaintiff was the (potentially armed) suspect described over the radio, it was reasonable for him to conduct a frisk in order to "neutralize the threat of physical harm." *Id.* at 24, 88 S.Ct. at 1881.

## B. *The Arrest*

■ "It is basic that an arrest with or without a warrant must stand upon firmer

---

6. *See* Compl. at 2 ("This action is brought pursuant to 42 U.S.C. sec. 1983 and sec. 1988 and the First, Fourth, Fifth and Fourteenth Amendments

to the United States Constitution."). *See also id.* at 4 (alleging a violation of plaintiff's right to counsel under the Sixth Amendment).

ground than mere suspicion...." *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963). To be constitutionally valid at the time it is made, an arrest must be supported by probable cause. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person to conclude that an offense has been committed by the person arrested." *Hoffman v. Reali*, 973 F.2d 980, 985 (1st Cir.1992).[7]

For present purposes, the question before the court is not whether Officer Butler *in fact* had probable cause to arrest plaintiff, but whether his conclusion to that effect was, at the time, sufficiently reasonable to afford him the protection of qualified immunity. *See id.* The court finds that the discovery of a weapon, coupled with the results of the warrant check, provided him with ample justification for taking plaintiff into custody. *See Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir.1991) ("Seeking an arrest warrant is 'objectively reasonable' so long as the presence of probable cause is at least arguable."). Another officer, standing in his shoes and possessing the same information, might reasonably have made the same decision. *Cf. Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (finding officers' arrest of wrong individual "understandable" and "a reasonable response to the situation facing them at the time"); *Whiting v. Kirk*, 960 F.2d 248 (1st Cir.1992) (granting qualified immunity to officers who arrested plaintiff pursuant to facially valid writ of execution). *But cf. Ricci v. Urso*, 974 F.2d 5 (1st Cir. 1992) (finding that presence of plaintiff's name in rolodex of suspected gambler could not support reasonable belief in probable cause); *Tillman v. Coley*, 886 F.2d 317 (11th Cir.1989) (denying qualified immunity to sheriff who mistakenly arrested suspect's aunt, who shared same name and lived next door).

█ As for Officer Holland, the record reveals that his involvement with plaintiff's arrest was limited to transmitting the incident report, the arrest sheet and the application for compliant to the Boston Municipal Court. The court fails to see how this essentially clerical action can serve as the basis for liability under § 1983.[8] Therefore, as plaintiff virtually concedes in his opposition papers, summary judgment should be entered in favor of Officer Holland, as well.

## IV.

## THE MOTION TO DISMISS

The City of Boston, Mayor Flynn and Commissioner Roache have moved to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Although it appears that the latter two defendants are sued in both their individual and official capacities, the course of proceedings have made clear that this is essentially an official-capacity action.[9] Accordingly, plaintiff's claims against the Mayor and the Commissioner shall be deemed subsumed by his claim against the City of Boston. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

---

7. Although the court does not discern in plaintiff's complaint an allegation of common law false imprisonment, it notes that such a claim would substantively overlap with his claim(s) under § 1983. *See Hall v. Ochs*, 817 F.2d 920, 926 (1st Cir.1987). "Under either theory, the root inquiry with respect to liability is whether the police had legal justification to detain the plaintiff." *Wagenmann*, 829 F.2d at 205. *See Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 325, 268 N.E.2d 860, 863 (1971) (equating state law "reasonable grounds" requirement with Fourth Amendment "probable cause" requirement).

8. At the time he filed his complaint, plaintiff apparently believed that Officer Holland had been the other arresting officer.

9. During the pendency of this action Mayor Flynn and Commissioner Roache both resigned, thereby causing their respective successors to be substituted as parties. *See* Fed.R.Civ.P. 25(d)(1). This automatic substitution has no bearing on the court's disposition of the motions now before it.

"[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993) (rejecting a heightened pleading standard in civil rights cases alleging municipal liability under § 1983). *See Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ In this case, the court understands plaintiff to be claiming that he was caused to suffer eight days of incarceration because the City of Boston has failed to establish adequate procedures for verifying the identities of arrestees. Before determining whether plaintiff has pleaded facts sufficient to support a finding of a municipal policy, the court must address the first inquiry in any § 1983 suit: to wit, "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) (quoting 42 U.S.C. § 1983).

In *Baker,* the Supreme Court addressed a similar claim under an analogous set of facts. The plaintiff in that case was arrested after a routine warrant check indicated that he was wanted on narcotics charges. Despite his protests of mistaken identification, he was held in jail for three days until officials realized that his brother was the individual they sought. Plaintiff subsequently initiated a § 1983 action against the sheriff, citing his failure to institute an identification procedure that would have disclosed the error. Recognizing that plaintiff "was indeed deprived of his liberty for a period of days," *id.* at 144, 99 S.Ct. at 2694, the Court nevertheless concluded that he "had no claim cognizable under § 1983," *id.* at 146–47, 99 S.Ct. at 2696.

Unfortunately for plaintiff, a similar conclusion is mandated in this case. Whatever claims his detention may have given rise to under state tort law, it gave rise to no claims under the United States Constitution. To quote the *Baker* Court:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with "due process of law."

*Id.* at 145, 99 S.Ct. at 2695.

Nothing in plaintiff's complaint calls into question the reasonableness of the "division of functions" in this case. It is well established that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). *See County of Riverside v. McLaughlin,* —— U.S. ——, ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991) ("[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*"). This requirement was met when plaintiff was brought to Boston Municipal Court the morning following his arrest.[10]

Plaintiff's allegation of a Sixth Amendment violation misconstrues the nature and purpose of the probable cause hearing. "The complaint and arrest warrant procedure in Massachusetts does not amount to an adversary judicial proceeding, nor does anything occur at this stage which could impair a defense." *Commonwealth v. Smallwood,* 379 Mass. 878, 884–85, 401 N.E.2d 802, 806

---

**10.** In dictum, the *Baker* Court intimated that a constitutional deprivation might result from the sheer length of an individual's pretrial detention, regardless of the procedures afforded by the State following arrest. *See Baker,* 443 U.S. at 145, 99 S.Ct. at 2694–95 (dictum). The court need not speculate as to "whether the *Baker* dictum limns a potentially viable cause of action," *Buenrostro v. Collazo,* 973 F.2d 39, 44 n. 7 (1st Cir.1992), for plaintiff has not asserted such a claim.

(1980). *See Myers v. Commonwealth*, 363 Mass. 843, 849, 298 N.E.2d 819, 824 (1973) ("A judicial finding of probable cause to arrest validates only the initial decision to arrest the suspect, not the decision made later in the criminal process to hold the defendant for trial."). "Because of its limited function and its nonadversary character, th[is] probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein*, 420 U.S. at 122, 95 S.Ct. at 867.

Cognizant of the indignities plaintiff no doubt suffered during his arrest and detention, the court is loath to dispose of his claims in their entirety. But where the law does not provide a remedy, a court is not at liberty to fashion one of its own.

## V.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend his complaint will be DENIED. The motion for summary judgment of defendants Patrick Butler and Donald Holland will be ALLOWED, as will the motion to dismiss of defendants Raymond Flynn, Francis Roache and the City of Boston.