Richard NOEL, Plaintiff,

v.

TOWN OF PLYMOUTH, MASSACHU-SETTS; George Madsen; Charles Warnock; William Fistori; Robert M. Texeira; Victor M. Higgins; John Doe Crosby; and Richard Roe Santos, Defendants.

Civ. A. No. 91–13230–PBS.

United States District Court,
D. Massachusetts.

July 14, 1995.

Robert LeRoux Hernandez, Law Offices of Robert L. Hernandez, Malden, MA, for plaintiff Richard Noel.

David C. Jenkins, Grady and Dwyer, Joyce F. Frank, Kopelman and Paige, Boston, MA, for defendants Town of Plymouth, Mass., George Madsen, Robert M. Texeira, Victor M. Higgins, John Doe Crosby, Richard Roe Santos.

David C. Jenkins, Grady and Dwyer, Joyce F. Frank, Kopelman and Paige, Douglas I. Louison, Merrick and Louison, Boston, MA, for defendants Charles Warnock, William Fistori.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SARIS, District Judge.

Plaintiff Richard Noel claims that he was beaten by two Plymouth police officers, in the presence of several others, when a series of misunderstandings led the chief of police to chase him down a dirt road and crash into a tree. Plaintiff brings this civil rights action for compensatory and punitive damages under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment and state law against the Town; its police chief, George Madsen; and six police officers. Along the lines more fully elaborated below, defendants' motion for summary judgment is *ALLOWED* in part, and *DENIED* in part.

### FACTUAL BACKGROUND

For purposes of this motion, the court takes the following facts as undisputed, except where otherwise (quite frequently) noted.

Noel spent the evening of January 21, 1989, from about 9:00 to 11:30, alone at a Plymouth restaurant and bar called Bert's. According to his testimony, he consumed three beers during that time. Noel set out by car toward his home, on Route 3A south, at about the same time that Chief Madsen was returning from his own social engagement, with his wife Dennette, in an unmarked Cadillac. Noel passed Madsen. The Madsens state that Noel's car was travelling at a high rate of speed with its high beams on, and that while he passed, Noel waved both arms at them. Noel denies all of these details, and states that, while the Madsens were traveling slowly, he was driving within the speed limit and passing in a legal passing area. The Cadillac caught up to Noel, and Noel, purportedly believing that it was following him, pulled to the side of the road to let it pass. Noel got back onto the road, and caught up to the Madsens.

The Madsens believe that he began to follow them at that point, while still on Route 3A. The Madsens turned onto Delancey Drive, where they reside. Noel began to follow them at this point. He states that an old friend (whom he had not seen for five years) lived on Delancey—and it suddenly occurred to him that she might be driving the car that he believed had been following him. He turned onto Delancey, and followed the Cadillac to see if it would stop beside his old friend's house.

The Madsens pulled into their own driveway, and watched Noel round the cul de sac and head back toward Route 3A. It was at this point that Chief Madsen, alarmed by what appeared to him to be erratic behavior, had a general police dispatch broadcast, and

began to follow Noel. Back on the highway, Noel travelled past the turnoff for his own home, out of fear (he says) of revealing his place of residence to the mysterious persons trailing him. A few turns later, he reached Old Sandwich Road, with the Cadillac still at his heels. After the road became unpaved, Chief Madsen lost control of his vehicle and crashed into a tree. Noel continued down the dirt road. He says he was going 35–40 miles per hour at this juncture; Officer William Fistori estimates that his speed was in the 50–60 miles per hour range.

Meanwhile, six police officers in four cars were making their separate ways to the scene, in response to Chief Madsen's dispatch. Victor M. Higgins was assigned as street sergeant for the northern end of town; and Robert M. Texeira street sergeant for the southern end. A pair of two-man cruisers were patrolling the Manomet section of Plymouth, where events came to a head: the team of Warnock and Santos; and the team of Fistori and Crosby.

Sgt. Higgins arrived first, from the opposite end of Old Sandwich Road, with his lights flashing. Noel stopped, produced his license and registration, and readily assented to accompany the Fistori/Crosby team and Sgt. Texeira (who had initially intercepted the car and had just pulled up) to the scene of Madsen's accident. Sgt. Higgins, who had not observed an odor of alcohol on Noel's person, returned to his beat. The Warnock/Santos team was already waiting with Madsen. At the scene of the accident, Noel was approached by Fistori, who asked for his version of the events. Fistori then asked Noel to exit his car—reportedly because he had observed Noel speeding, and inferred from his slurred speech, glassy eyes, and malodorous breath, that Noel was drunk. Noel states that when he was attempting to leave his vehicle he was hit in the face and lost consciousness. The next thing he can remember, he was on the ground, flanked by Warnock and Fistori, and was struck from behind by one of them as he tried to get up. Noel then claims he was thrown against his car and handcuffed tightly.

According to defendants, Noel refused to leave his car. Both Fistori and Warnock have stated that while they, in the manner prescribed by training, were forcibly trying to remove Noel from his car and handcuff him, Noel resisted and threw several wild punches at Warnock. They then, on their own authority, decided on the spot to arrest Noel, each for a different reason—Warnock on the charge of assault and battery on a police officer; and Fistori on the charge of driving while under the influence. During the scuffle and the arrest, Warnock's partner, Santos, was standing about ten feet away with Chief Madsen, waiting for an ambulance to arrive; Fistori's partner, Crosby, and their supervisor, Sgt. Texeira, were also in the general vicinity; Noel does not recall seeing any of these three officers, and cannot say where they were standing. Chief Madsen asked Crosby to have "that person" brought to him. When Crosby brought Noel before him, Madsen just gave him a stare. At this time, Crosby, from short range, observed a bleeding cut on Noel's forehead (but no other injuries); Noel was cooperative.

At the police station, Noel was booked and given a breathalyzer test by Lieutenant Kevin Fahy (who is not a named defendant). Fahy detected a strong odor of alcohol, and glassy eyes. The breathalyzer examination produced a blood alcohol level of 1.7 to 1.9. A booking photograph was then taken, and filed away by Sgt. Higgins. According to Higgins, this photo showed bruises on the left side of Noel's face and blood "around" his mouth. Higgins concedes that, based on his training, accurate breathalyzer tests cannot be taken when there is blood *in* the mouth. Noel testified there was blood in his mouth when the breathalyzer was taken. The photo was allegedly lost. Noel was charged with driving under the influence.

Noel claims that on January 23, two days after the incident, he encountered Chief Madsen in a shopping mall. Noel further claims that Madsen pointed a finger at him and threatened that "if you ever do that again, I will kill you." Madsen denies the encounter.

In September, 1991, a judge of the Plymouth District Court dismissed the criminal charges filed against Noel, either because the booking photo was lost, or because Madsen

failed to appear to testify, or both. (The record is unclear on this point.)

Noel describes his physical injuries as a "severe scrape and bruise to the upper left side of my eye, bruises and abrasions to the underside of the cheek of my left eye, swollen jaw, very large gash inside my mouth on the left-hand side, bruises to my left shoulder, front and back. . . . bruises on my back, left side of my back, and bruises on my buttocks." Noel also states that, as a result of the incident, he missed one week of work; he suffered eating and sleeping disturbances, feelings of confusion, fear for his life, nightmares, and depression; he was psychologically unable to drive for about a year and a half; and he had to seek counseling.

### *DISCUSSION*

Plaintiff's first amended complaint lists eight causes of action, four under civil rights statutes and four under common law: violations of the federal civil rights act, 42 U.S.C. § 1983 (Count I); violations of the Massachusetts Civil Rights Act (MCRA), Mass.Gen.L. ch. 12 § 11I, arising from the Old Sandwich Road incident (Count II); false imprisonment (Count III); assault and battery (Count IV); intentional infliction of emotional distress (Count V); malicious prosecution (Count VI); denial of equal rights guaranteed by Mass.Gen.L. ch. 93, § 102(b) (Count VII); and violations of the MCRA, arising from the alleged mall incident (Count VIII).

### A. *Summary Judgment Standard*

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso,* 37 F.3d 760, 762 (1st Cir.1994) (citing cases).

"To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* Rule 56(e) "requires nonmovants to submit evidence that would be admissible at trial to oppose properly submitted motions for summary judgment." *FDIC v. Fonseca,* 795 F.2d 1102, 1110 (1st Cir. 1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers, supra* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

### B. *Federal Civil Right Claims (Count I)*

Plaintiff asserts four grounds for his Section 1983 claim against the individuals and Town of Plymouth: (1) freedom from the use of excessive, unreasonable force; (2) freedom from unreasonable search and seizure; (3) freedom from intimidation, humiliation and damage to reputation; and (4) freedom from malicious prosecution. As plaintiff does not separately discuss the third claim in his memorandum, the court deems it abandoned.

#### 1. *Municipal Liability*

Municipal liability under section 1983 cannot be based on *respondeat superior.* *Monell v. New York City Dep't of Soc. Svces.,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). Municipal liability lies only when a municipal policy or custom causes the alleged constitutional deprivation. *Manarite v. City of Springfield,* 957 F.2d 953, 958 (1st Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 113, 121 L.Ed.2d 70

(1992). Liability can be imputed to a City based upon the acts or omissions of an official who possesses final authority to establish policy with respect to the action that inflicted injury on plaintiff. *See, e.g., Pembaur v. Cincinnati,* 475 U.S. 469, 479–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). Thus, a "municipality can be held liable if its police chief is a policymaker and acquiesces in a police custom or policy as to which he has actual or constructive knowledge." *Kinan v. Brockton,* 876 F.2d 1029, 1035 (1st Cir.1989).

■ Supervisory liability will not be imposed unless plaintiff can satisfy the quite difficult burdens of showing the breach of a constitutional duty, and a causal link. It is well established that a supervisor may be found liable under section 1983 only on the basis of his own acts or omissions. *Manarite,* 957 F.2d at 957. The Supreme Court has made clear that section 1983 permits recovery for serious physical harm only where the defendant acts *intentionally* or with an analogous state of mind usually described as *"deliberate indifference"* to deprivation of the victim's constitutional right. *Manarite,* 957 F.2d at 955 (citing *Canton v. Harris,* 489 U.S. 378, 388–390, 109 S.Ct. 1197, 1204–1206, 103 L.Ed.2d 412 (1989) (deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case) (emphasis added)). When liability for serious harm or death is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm; (2) defendant's actual knowledge of (or, at least willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known serious risk. *Manarite,* 957 F.2d at 956; *see also Germany v. Vance,* 868 F.2d 9, 17–18 & n. 10 (1st Cir.1989) (discussing standard).

Once plaintiff has proved the breach of a constitutional duty, he then must prove causation—a barrier equally formidable. The First Circuit has declared repeatedly that "there must be an *'affirmative link'* between the street-level misconduct and the action, or inaction of supervisory officials." *Bowen v. Manchester,* 966 F.2d 13, 20 (1st Cir.1992) (citations omitted) (emphasis added). Thus, for instance, in the case of a claim for failure to train, "the identified deficiency in a city's training program must be *closely related* to the ultimate injury." *Canton,* 489 U.S. at 391, 109 S.Ct. at 1206 (emphasis added). The court adjudicating such a claim must ask itself a "but for" question: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.; see also Bowen,* 966 F.2d at 20 (applying *Canton* to reject claim that City was liable for failing to train police officers in suicide prevention).

■ In this case, plaintiff has alleged that the Town had a custom, policy or practice of "failing to properly train and supervise officers with respect to their performance and conduct of criminal investigations ... [and] failure to document citizen complaints." This policy resulted in the deprivation of plaintiff's constitutional rights to be "free from excessive force, false arrest, false imprisonment, and malicious prosecution." Plaintiff encloses in the record an answer to an interrogatory in which he details sloppily investigated prior incidents of police misconduct. There are only three documented incidents in the record, however. First, there is an affidavit from Kathleen and Dennis Kapolis, to the effect that their son was beaten by the Plymouth police on November 24, 1990, and their complaint ignored. The other two incidents are drawn from filings in *Crowell v. Plymouth,* CA No. 88–2054–K. Carrie Tolonen testified in her deposition that she was beaten by an Officer Roderick in May, 1987. Donna Crowell wrote a letter complaining of repeated, outrageous abuse at the hands of Officer Roderick. Two other documents in the record purport to demonstrate an inadequate response to the complaints regarding Roderick by Chief Madsen and a previous police chief. Roderick was discharged in 1987.

■ This evidence is plainly inadequate, without regard to the validity of the allegations. The First Circuit has indicated that, however disturbing, a few isolated instances of brutality cannot be said to "form a pattern of police violence so striking as to allow an inference of supervisory encouragement, condonation, or even acquiescence." *Voutour v. Vitale,* 761 F.2d 812, 820 & n. 5 (1st Cir.

1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). It cited, by way of contrast, the case of *Herrera v. Valentine,* 653 F.2d 1220, 1225 (8th Cir.1981), where 40 complaints of police misconduct brought to the attention of police supervisors were held sufficient to establish section 1983 supervisory liability. In the absence of a showing of remotely comparable strength, this court dismisses the section 1983 claim (Count I) with respect to the Town of Plymouth.[1]

## 2. *Excessive Force Claims Against Individuals Under Fourth Amendment*

Under the Fourth Amendment,[2] a law enforcement officer may use "such force as is reasonably necessary to effect an arrest." *United States v. McQueeney,* 674 F.2d 109, 113 (1st Cir.1982). The reasonableness of such use of force "must be viewed from the perspective of the officers at the scene, [under] the 'circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Dean v. Worcester,* 924 F.2d 364, 368 (1st Cir.1991) (citations omitted). An additional circumstance considered is "the manner in which the arrest is effected." *Id.* at 369 (citation omitted).

■ "[C]ourts have held that a police officer who fails to prevent the use in his presence of excessive force by another police officer may be held liable under § 1983." *Hathaway v. Stone,* 687 F.Supp. 708, 712 (citing cases) (D.Mass.1988) (holding that a reasonable officer who saw another officer drag an arrestee from a car, throw her to the ground, and begin to kick her, would realize that he was under a duty to stop the assault); *accord O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988) (citing cases); *Gross v. Bohn,*

782 F.Supp. 173, 179 (D.Mass.1991) (citing cases). However, an onlooker cannot be charged with section 1983 liability for another's sudden, momentary actions. *See Gaudreault v. Salem,* 923 F.2d 203, 207 n. 3 (1st Cir.1990) (defendant officers had no " 'realistic opportunity' to prevent an attack" where "the attack came quickly and was over in a matter of seconds."), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); *O'Neill,* 839 F.2d at 11–12 ("The three blows were struck in such rapid succession that [the defendant officer] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.").

In this case, there are material issues of relevant fact with respect to the force used by defendants Warnock and Fistori during their arrest of Noel on Old Sandwich Road. Defendant Higgins was not at the scene of the arrest, and plaintiff has moved to dismiss him as a defendant. Defendant Madsen was there. No evidence suggests that he ordered the assault, that, given his own injuries, he even observed the assault, or that he had the opportunity to intervene.

■ The only remaining question, then, involves defendants Texeira, Santos, and Crosby. All that is known is that Santos was 10 feet away with the Chief; Crosby was close enough that the Chief was able to ask him to bring over Noel a few moments after the arrest; and Sgt. Texeira was in the general vicinity, in the capacity of supervisor of the four junior officers. Although the plaintiff's story is necessarily sketchy, since he cannot recall what happened in the moments after he was removed from his car, the plaintiff's purported injuries are most consistent with a scuffle of quick duration, involv-

---

1. In his memorandum, but not his amended complaint, plaintiff also alleges that the municipality should be liable for violations of section 1983 because he was released prior to the arrival of a magistrate to set bail and without an independent medical examination pursuant to G.L. ch. 263, § 5A. However, even if plaintiff's rights were violated, there is no evidence of a custom or practice.

2. The amended complaint does not allege a Fourth Amendment violation, only a violation of the Fourteenth Amendment. However, the memorandum does refer to the Fourth Amendment, which was made applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *See Schiller v. Strangis,* 540 F.Supp. 605, 611 (D.Mass.1982).

ing a blow to the face followed by a blow to the back. This court concludes that, if a wrongful beating occurred, Madsen, Texeira, Crosby, and Santos had no realistic opportunity to intervene, and cannot be held liable for failing to do so.

### 3. *Malicious Prosecution Claim Under § 1983*

 Noel claims he was arrested and charged maliciously without probable cause in order to deter him from pressing charges on the beating. The malicious prosecution claim, whether construed as asserting a substantive or procedural due process claim, is not actionable under Section 1983. *Albright v. Oliver,* — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) "would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983 ..." *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994). The First Circuit, in *Perez–Ruiz,* pointed to Justice Souter's concurring opinion which concluded that where a civil rights plaintiff has "demonstrated no distinct injury from the alleged malicious prosecution, ... his custody-based claims were better addressed under the Fourth Amendment." *Id.* at 42–43. Here, in light of the breathalyzer results (even if the bloody mouth decreased the test's accuracy), the short duration of the incarceration until 6:00 a.m., and the dismissal of the charges, the record does not support a claim of conscience-shocking activity, or of any distinct injury apart from the custody-based claims raised by the Fourth Amendment.

The availability of an adequate remedy for malicious prosecution under Massachusetts law eviscerates plaintiff's procedural due process claim under Section 1983. *Id.* at 43. *Accord Reid v. State of New Hampshire,* 56 F.3d 332 (1st Cir.1995). *See also Ayala–Martinez v. Anglero,* 982 F.2d 26, 27–28 (1992) (even where police officer fabricated charges as cover up for police brutality, no federal § 1983 claim where no evidence of racial or political motivation, deprivation of equal protection, or conduct to prevent free speech or conscience shocking behavior).

### 4. *Unconstitutional Seizure*

 Noel claims that he was illegally arrested in violation of 42 U.S.C. § 1983. If there were no probable cause for Noel's arrest, he can seek redress under 42 U.S.C. § 1983. *Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir.1989). *See generally Albright v. Oliver,* — U.S. —, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (plurality opinion) (rejecting a claim that there is a substantive due process right to be free from criminal prosecution except upon probable cause, holding that "it is the Fourth Amendment, and not substantive due process, under which [the] claims must be judged").

In *Reid v. State of New Hampshire, supra,* the First Circuit cast some doubt on the continuing validity of a federal claim for false arrest under Section 1983 under the due process clause: "As New Hampshire recognizes the torts of false arrest and malicious prosecution, [citation to New Hampshire law omitted] those claims should have been analyzed under state law, rather than § 1983. Given an adequate state law remedy for a procedural due process violation, no § 1983 claim lies." *Id.* at 336 n. 8 and 341. Here, however, the section 1983 claim is predicated on a Fourth Amendment deprivation, not a procedural due process violation. *Cf. Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (applying standard of objective reasonableness in § 1983 claim under the Fourth and Fourteenth Amendments where a person has been arrested based on an illegal arrest warrant for "no reason, or a bad reason").

Under the Fourth Amendment, "[p]robable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person, or one of reasonable caution, to conclude that an offense has been, will be, or is being, committed. The quantum of evidence necessary to support probable cause must satisfy only this objective standard, and is not required to rise to the level of that needed to sustain a conviction." *United States v. Cruz Jimenez,* 894 F.2d 1, 4 (1st Cir.1990) (citations omitted).

In this case, the arresting officers had received a dispatch sent out by Chief Madsen, to the effect that plaintiff was driving erratically and endangering the public safety. In addition, Officer Fistori stated in his report that he had personally observed in Noel three classic signs of intoxication, and had seen him driving at a speed that is clearly excessive for a dirt road at night. (It cannot be said with certainty on the available record whether Noel was exceeding the legal speed limit in any given zones.) Of course, "operating a motor vehicle while under the influence of liquor is a misdemeanor." *Commonwealth v. Grise*, 398 Mass. 247, 250, 496 N.E.2d 162, 164 (1986) (citing Mass.Gen.L. ch. 90, § 24; ch. 274, § 1). However, Noel's deposition testimony denying that he was intoxicated or driving at high rates of speed—together with Sgt Higgins' failure to observe signs of intoxication and the doubts raised concerning the reliability of the breathalyzer test administered—gives rise once again to material issues of relevant fact. With respect to the two arresting officers, Warnock and Fistori, this court concludes that summary judgment must be denied insofar as it is based on a theory of unconstitutional seizure. Plaintiff did not press these claims against the other individual defendants.

## C. *State Claims*

### 1. *Assault and Battery*

Plaintiff asserts a claim for assault and battery against Warnock and Fistori. Assault and battery is defined as the "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Commonwealth v. McCan*, 277 Mass. 199, 203, 178 N.E. 633, 634 (1931). An "officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the [lawful] arrest.'" *Julian v. Randazzo*, 380 Mass. 391, 396 n. 1, 403 N.E.2d 931, 934 n. 1 (1980) (citation omitted). This standard has been deemed "essentially the same" as the Fourth Amendment standard by the First Circuit. *Dean*, 924 F.2d at 369. Accordingly, the "identical reasoning ... controls." *Id.* The Court **ALLOWS** the motion for summary judgment with respect to all defendants except Warnock and Fistori.

### 2. *False Imprisonment*

The tort of false imprisonment consists in the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement. *Santiago v. Fenton*, 891 F.2d at 383, citing *Wax v. McGrath*, 255 Mass. 340, 342, 151 N.E. 317, 318 (1926). The claim for false imprisonment, in this case, therefore hinges on the determination whether a false arrest occurred. *See Wax v. McGrath*, 255 Mass. 340, 342, 151 N.E. 317 (1926) (unlawful restraint by force or threat constitutes false imprisonment); *Ortiz v. County of Hampden*, 16 Mass.App.Ct. 138, 140, 449 N.E.2d 1227 (1983) (same); *See also* Restatement (Second) Torts § 35 (1965). The disputed element here is "unjustified." Under Massachusetts common law, it is a continuing tort for an officer to unlawfully arrest and detain a person.

The state requirement of "reasonable grounds" for arrest may fairly be equated with the constitutional requirement of "probable cause." *Santiago v. Fenton*, 891 F.2d at 383. In addition to reasonable grounds, "Massachusetts law demands that several other requirements be met to make a lawful warrantless arrest. 'A peace officer, in the absence of statute, may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace; (2) is committed in the presence or view of the officer, and (3) is still continuing at the time of the arrest or only interrupted, so that the offen[s]e and the arrest form parts of one transaction.'" *Id.* at 383 (citing, *inter alia*, Mass.Gen.L. ch. 231, § 94A). Because there are disputed issues of fact concerning the basis for the arrest, summary judgment is denied on Count III against Warnock and Fistori. There is no evidence that any other defendant officer took an active part in plaintiff's arrest or imprisonment so as not to be immune from the state tort of false arrest under Mass.Gen.L. ch. 263, § 3. *See Santiago v. Fenton*, 891 F.2d at 384.

### 3. Malicious Prosecution

"In an action for malicious prosecution, a plaintiff must establish that the criminal action was brought maliciously, without probable cause, and has been terminated in favor of the plaintiff." *Wynne v. Rosen,* 391 Mass. 797, 798, 464 N.E.2d 1348, 1350 (1984). Massachusetts now follows the majority rule that "a criminal prosecution is terminated in favor of the plaintiff when the district attorney formally abandons the criminal proceedings by a nolle prosequi or a motion to dismiss." *Id.,* 391 Mass. at 800, 464 N.E.2d at 1351. A "criminal prosecution terminated by nolle prosequi on the basis of a *procedural or technical defect* will not suffice as a favorable termination." *Id.,* 391 Mass. at 801, 464 N.E.2d at 1351 (emphasis added).

Defendants argue that the common law claim fails to make out the element of termination favorable to the plaintiff. The record does not support the defense that the case was dismissed on a technical or procedural ground. *See* Restatement (Second) of Torts § 660 (1977) (governing "indecisive termination of proceedings"). Dismissal of a case because of a named defendant's failure to appear or because of the destruction or loss of exculpatory evidence does not constitute a procedural or technical defect. Given the material issues of relevant fact raised by plaintiff, this court cannot dismiss the claim of malicious prosecution (Count VI) with respect to the two arresting officers, Warnock and Fistori.

### 4. Emotional Distress

"To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144–145, 355 N.E.2d 315 (1976). To be considered extreme and outrageous, the defendant's conduct must be 'beyond all bounds of decency and ... utterly intolerable in a civilized community.'" *Sena v. Commonwealth,*

417 Mass. 250, 263–64, 629 N.E.2d 986, 994 (1994) (citations omitted).

Whether the alleged conduct of Warnock, Madsen and Fistori reached the requisite level of outrageousness is a question for the factfinder. None of the other defendants are alleged to have performed any acts that a factfinder could reasonably find to be outrageous.

### 5. Massachusetts Civil Rights Act Counts II and VIII

Noel asserts claims against defendants Madsen, Warnock and Fistori under the Massachusetts Civil Rights Act ("MCRA"). The MCRA is triggered by the defendant's interference "by threat, intimidation, or coercion" with the plaintiff's "exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth." Mass.Gen.L. ch. 12, § 11I. The cases holding that the MCRA was violated have featured "actual or potential physical confrontations, involving a threat of harm." *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 n. 8, 631 N.E.2d 985, 990 n. 8, *cert. denied,* — U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994); *cf. Redgrave v. Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 95, 502 N.E.2d 1375, 1376 (1987) (involving potential threats to the physical safety of the audience and symphony players). A claim that an arrest was made without probable cause or with excessive force is actionable under Mass.Gen.L. ch. 12, § 11I. *See, e.g., Santiago v. Fenton,* 891 F.2d at 387. Accordingly, the motion for summary judgment on Count II is *DENIED.*

A closer question is presented by the death threat allegedly made by Chief Madsen in the mall. While the statement Madsen made would certainly be a "threat" or "intimidation" under the statute, the record does not establish that Madsen was interfering with the enjoyment of any rights secured by the constitution or laws of the United States or Commonwealth. There is no evidence that Madsen was attempting to intimidate Noel into dropping any federal

claims or to interfere with his right to contest the arrest. Accordingly, the motion for summary judgment on Count VIII is **AL-LOWED** with respect to Chief Madsen.

### D. *State Guarantee of Equal Rights*

Plaintiff has asserted a claim pursuant to Mass Gen.L. ch. 93, § 102(a), which states as follows:

> All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff has neglected to disclose to which, if any, suspect classification he belongs. Plaintiff has also failed to suggest that the defendants alleged infringement of his rights was motivated by a discriminatory animus, and there is no basis in the record for inferring such an animus. *See Coalition for Civil Rights v. Harvard College,* 413 Mass. 66, 70–71, 595 N.E.2d 316, 318 (1992) (complaint dismissed for failure to allege discriminatory treatment). In any event, plaintiff has not pressed this claim in the memorandum and it is deemed waived. Summary judgment is accordingly **ALLOWED** on Count VII.

### E. *Pendent Jurisdiction Over Claim Against Madsen*

Because the claim pending against Madsen for intentional infliction of emotional distress arises out of the common nucleus of operative facts involving the challenged arrest, the court has determined to exercise supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367. *See* 13B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3567.2 at 151 n. 13; *Bowers v. Moreno,* 520 F.2d 843, 847–48 (1st Cir.1975); *Godfrey v. Perkin–Elmer Corp.,* 794 F.Supp. 1179, 1184 (D.N.H. 1994).

### ORDER

For the foregoing reasons, defendants' motion for summary judgment (Docket # 37) is **ALLOWED IN PART, AND DENIED IN PART** as follows:

a. With respect to defendants Warnock and Fistori, the motion is **DENIED** in its entirety except for Count VII, which is dismissed.

b. With respect to defendants Texeira, Crosby, Santos and the Town of Plymouth, the motion is **ALLOWED** in its entirety.

c. With respect to defendant Madsen, the motion is **ALLOWED** except for Count V.

d. With respect to defendant Higgins, all claims are dismissed.