Neil JONIELUNAS, Plaintiff,

v.

CITY OF WORCESTER POLICE DE-PARTMENT, Edward Gardella, in his capacity as Police Chief, Jennifer Humphrey and David G. Decelles, Defendants.

No. CIV.A.00–40211–NMG.

United States District Court,
D. Massachusetts,
Central Division.

June 1, 2004.

Andrew M. Fischer, Janan E Fischer, Boston, MA, for plaintiff.

Janet McGuigsan, City Hall, Worcester, MA, for defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

As this Gordian knot persists into the post-trial stage, the remaining individual and municipal defendants renew their Motion for Judgment as a Matter of Law. Not to be outdone, Plaintiff Neil Jonielunas ("Jonielunas") moves for attorney's fees and related costs to which the Defendants counter with a vigorously contested Motion to Strike.

### I. *Factual Background*

By way of a complaint filed in Worcester Superior Court and removed to this Court in November, 2000, Jonielunas alleged various intentional torts and violations of his state and federal civil rights by the City of Worcester ("the City") and certain members of its police department.

Jonielunas was employed by the City as a police officer from July 1977 until a 1980 motorcycle accident forced his eventual retirement from the police department in 1990. Following his retirement, Jonielunas worked as a licensed firearms salesman, most recently at the Village Gun Shop in Northboro.

In August 1994, Jonielunas filed a complaint for, and eventually obtained, a divorce from his wife, Nancy Jonielunas, who has since remarried and become Nancy Dube ("Dube"). At the time of their divorce, the Jonielunases had two minor children, Lauren and Colin. In 1997, Dube alleged that Jonielunas had sexually abused one or both of his children. Based, in part, on that allegation, Dube successfully requested that the Probate Court suspend Jonielunas's visitation rights and obtained an order, pursuant to M.G.L.C. 209A ("the 209A Order") preventing Jonie-

lunas from visiting his children without court-approved supervision.[1]

On May 14, 1998, Dube informed the Worcester police that she believed a violation of the 209A Order had occurred. The previous day, Jonielunas was alleged to have repeatedly driven by Lauren's school while Lauren was in the schoolyard. Officer James E. Grady ("Grady") of the Worcester police department responded to Dube's complaint. Grady examined the 209A Order and determined that, based on the language of the order, no violation had occurred on May 13th. Although the Defendant, Officer David DeCelles ("DeCelles") of the Worcester police Domestic Violence Unit determined that probable cause for an arrest existed as a result of that incident, Jonielunas was not arrested at that time.[2]

Later that same month, Jonielunas was again alleged to have inappropriately contacted his daughter, Lauren. His ex-wife claimed that, on the morning of May 27, 1998, Jonielunas drove by Lauren's school where he "gave her the middle finger and leered at her." Nancy Dube again reported the incident as a violation of the 209A Order. Later that day, the Defendant Worcester Police Officer Jennifer Humphrey ("Humphrey") was dispatched to Dube's home to investigate the reported violation. During her investigation, Humphrey observed that Lauren appeared distraught by the incident, and learned that Dube had just recently moved into her residence. Moreover, Dube thought that Jonielunas did not know her new address or of Lauren's new school.

Following her meeting with Dube and Lauren, Humphrey consulted with her sergeant, Frank Lahey, who instructed her to look at the 209A Order. He told her that if the order suggested probable cause for an arrest, Humphrey should have Jonielunas arrested by the police in Warren, where Jonielunas then resided. Based on the language of the 209A Order, Humphrey determined that Jonielunas was prohibited from being alone with his children and that a violation of the 209A Order had occurred. Humphrey apprised the Warren Police Department of her conclusion and directed the Warren police to arrest Jonielunas at his home that night, which they ultimately did.

Sometime after the Warren police received the request from Officer Humphrey, they offered the Worcester police an alibi for the alleged May 27th violation by Jonielunas. While in the Communications Department at the Worcester police station, Humphrey learned that the Warren police telephoned to inform the Worcester officers that Jonielunas could not have violated the 209A Order on the morning of May 27th because he was "with" the Warren police at that time. Several Warren police officers later elaborated that they saw Jonielunas at locations in Warren at 8:45 a.m. that day, approximately the same time as the second alleged violation of the 209A Order. The complaint pursuant to which Jonielunas was arrested was ultimately dismissed for lack of prosecution and this lawsuit was filed.

After a four-day trial, a jury returned a verdict on December 12, 2003, in which it found that (1) neither Humphrey nor DeCelles violated Jonielunas's constitutional right to be free from arrest except based on probable cause, (2) Officer DeCelles

---

1. That order (by virtue of the manner in which the form was completed) did not specifically prevent Jonielunas from *contacting* Lauren and Colin.

2. DeCelles's only involvement in this case was, apparently, with respect to the investigation of the May 13th incident.

was liable to Jonielunas under the state law claim of false imprisonment and (3) the City was liable to Jonielunas for a municipal violation of 42 U.S.C. § 1983. The jury awarded Jonielunas damages in the amount of $5,000 against DeCelles for false imprisonment and $45,000 against the City for the § 1983 violation.

Now pending before this Court is the Defendants' Renewed (Post–Judgment) Motion for Judgment as a Matter of Law (Docket No. 109) and the Plaintiff's Motion for Attorney's Fees (Docket No. 112).

## II. *Legal Analysis*

### A. Standard of Review

Pursuant to Fed.R.Civ.P. 50(b), a moving party may renew a request for judgment as a matter of law by "filing a motion no later than 10 days after entry of judgment[.]" In ruling on such a motion if a verdict was returned at trial, a court is faced with the following options: (1) to allow the judgment to stand, (2) to order a new trial or (3) to direct entry of judgment as a matter of law. Fed.R.Civ.P. 50(b).

As the First Circuit Court of Appeals has held, a district court may grant a motion for judgment as a matter of law only when, after considering the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, "the record reveals no sufficient evidentiary basis for the verdict." *Zimmerman v. Direct Fed. Credit Union,* 262 F.3d 70, 75 (1st Cir.2001); *see also Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir. 1987)(courts "must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant.").

Moreover, courts "take the facts as shown by the nonmovant's evidence and by at least such of movant's uncontradicted and unimpeached evidence as, under all the circumstances, the jury virtually must have believed." *Wagenmann,* 829 F.2d at 200, *quoting Karelitz v. Damson Oil Corp.,* 820 F.2d 529, 530 (1st Cir.1987).

Certain considerations are beyond the Court's purview. Specifically, "the [C]ourt may not weigh the evidence, undertake credibility determinations, or engage in differential factfinding." *Zimmerman,* 262 F.3d at 75. Simply put,

> the jury's verdict must stand unless the evidence, taken in the light most favorable to the prevailing party, points unerringly to an opposite conclusion. *Id.*

Even if the standard for judgment notwithstanding the verdict has been met, this Court has discretion to order a new trial rather than grant judgment as a matter of law. The Court may do so "if it believes that the defect in the nonmoving party's proof might be remedied on a second trial[.]" 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 2538, at 357 (2d ed.1994); *see also Malley–Duff & Associates v. Crown Life Ins. Co.,* 734 F.2d 133, 145 (3d Cir. 1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984)(finding inconsistent verdict, vacating jury award and ordering a new trial).

The standard for ordering a new trial is governed by Fed.R.Civ.P. 59(a) by which it is determined that this Court

> may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice. *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 717 (1st Cir.1994).

### B. Analysis

The jury in the instant case returned a verdict in which it found that DeCelles had falsely imprisoned Jonielunas and that the City maintained a custom or policy that

violated the right of Jonielunas to be free from arrest except based upon probable cause.

### 1) False Imprisonment Claim Against DeCelles

■ To sustain a claim for false imprisonment in Massachusetts, a plaintiff must demonstrate an intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement. *Noel v. Town of Plymouth*, 895 F.Supp. 346, 354 (D.Mass.1995)(internal citations omitted). In *Noel*, the determination of whether a false imprisonment occurred hinged on whether a false arrest occurred. *See id.*

■ Under Massachusetts common law, in order for an arrest to be lawful, a police officer must have "reasonable grounds" for making the arrest. *See Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir.1989); *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 323–26, 268 N.E.2d 860, 862–64 (1971). "The requirement of reasonable grounds has been held to be substantially overlapping with the constitutional requirement of probable cause." *Santiago*, 891 F.2d at 383, *citing Wagenmann v. Adams*, 829 F.2d 196, 205–06; *Coblyn*, 359 Mass. at 323–26, 268 N.E.2d at 862–64. Thus, a police officer may be liable for false imprisonment where, either directly or indirectly, he causes the false arrest of a putative tort claimant.

■ In the instant case, Officer DeCelles's involvement in the arrest of Jonielunas must have been unclear to the jury. While DeCelles testified that he told Officer Humphrey to arrest Jonielunas, it is clear that DeCelles's only involvement with this case was in connection with the earlier investigation by Officer Grady into the alleged violation of the 209A Order on May 13 and 14, 1998.

Moreover, the jury returned an inconsistent verdict by finding that (1) neither Officer Humphrey nor Officer DeCelles violated the Plaintiff's civil rights, (2) Officer Humphrey was not liable for false imprisonment and (3) Officer DeCelles *was* liable for such conduct. Given those findings, the jury's verdict that DeCelles had falsely imprisoned Jonielunas cannot stand.

The evidence, even construed in the light most favorable to Jonielunas, *See Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 75 (1st Cir.2001), does not demonstrably support DeCelles's liability for false imprisonment. The Court deems it preferable, however, to order a new trial rather than to grant judgment in favor of DeCelles as a matter of law because another jury should be permitted to hear evidence that may clarify the extent to which Officer DeCelles was involved in the arrest of Jonielunas and the confusion over such involvement.

### 2) Section 1983 Claim Against The City

To establish liability for an unconstitutional municipal custom or policy under 42 U.S.C. § 1983, a plaintiff must prove:

(1) that the governmental entity's employees engaged in a continuing, widespread, persistent pattern of conduct in violation of the constitutional standard, (2) that the governmental entity's policy-making officials, after having notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of that misconduct, and (3) that the plaintiff was injured by continued misconduct within the persistent pattern, thus showing that the custom was a moving force behind the violation of the constitutional standard. *Armstrong v. Lamy*, 938 F.Supp. 1018, 1035–36 (D.Mass.1996), *citing Gates v. Unified School Dist. No. 449 of Leavenworth, Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

With respect to the first element, the law is well-settled that "a single incident" of misconduct, without more, "cannot provide the basis for municipal liability under § 1983." *Bordanaro v. McLeod,* 871 F.2d 1151, 1161 n. 8 (1st Cir.1989). To hold otherwise would "be the equivalent of imposing *respondeat superior* liability upon the municipality." *Id., citing Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). A municipality may not be held liable under § 1983 for either *respondeat superior* or for vicarious liability. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

With respect to the second element, a plaintiff must establish that, after receiving notice of the alleged misconduct, a policymaking official remained deliberately indifferent to that misconduct. "Deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's rights." *Hegarty v. Somerset,* 53 F.3d 1367, 1380 (1st Cir. 1995).

In other words, where a supervisory official was not actively involved in the challenged conduct, he may be liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) there existed some causal link between the challenged behavior and the indifference of the supervisor such that it may be characterized as encouragement, condonation, acquiescence or gross negligence amounting to deliberate indifference. *See id.* at 1379–80, *quoting Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902–03 (1st Cir.1988).

Finally, the policymaking official or officials must have been responsible for establishing final policy with respect to the subject matter in question and must have chosen the course of action that led to the alleged constitutional violation from a range of various alternatives. *See Manarite By and Through Manarite v. City of Springfield,* 957 F.2d 953, 958 (1st Cir. 1992), *citing Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

With respect to the third element of a municipal liability claim, a plaintiff must demonstrate that the municipal custom or policy caused, or was the "moving force behind," the plaintiff's injury. *See Bordanaro v. McLeod,* 871 F.2d 1151, 1157 (1st Cir.1989), *citing Oklahoma City v. Tuttle,* 471 U.S. 808, 819, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "There must be some affirmative link between the municipal custom and the constitutional deprivation." *Bordanaro,* 871 F.2d at 1157, *citing Tuttle,* 471 U.S. at 824–25 & n. 8, 105 S.Ct. 2427.

In the instant case, the jury returned a verdict in which it found that the City maintained a custom or policy that violated Jonielunas's right to be free from arrest except based on probable cause. The jury also found, however, that neither Officer Humphrey nor Officer DeCelles intentionally or recklessly violated that same right. That outcome raises the question of whether a municipality may be liable for an unconstitutional custom or policy where no such liability has been imposed upon the individuals alleged to have perpetrated the actual constitutional injury.

The Supreme Court addressed a similar situation in *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)(per curiam). In *Heller,* an individual sued the City of Los Angeles, individual members of the Los Angeles Police Commission and two Los Angeles police officers alleging violations of § 1983. *Id.* at 797, 106 S.Ct. 1571. The case arose when the two police officers stopped Heller on suspicion of driving while intoxicated and administered a series of field sobriety tests. *Id.; Heller v. Bushey,* 759 F.2d

1371, 1372 (9th Cir.1985). The officers were "apparently dissatisfied with the results" and decided to take Heller to the police station for a breath test. *Heller*, 759 F.2d at 1372–73.

Heller became belligerent when he was later notified that he was under arrest. *Id.* at 1373. In the ensuing fracas, Heller fell through a plate glass window after one of the officers tried to handcuff him. *Id.* In the first part of the bifurcated-trial that followed, a jury returned a verdict in favor of the defendant police officer and the district court dismissed the action against the municipal defendants, reasoning that because the police officer had been exonerated by the jury there existed no basis for liability against the remaining municipal defendants. *Heller*, 475 U.S. at 798, 106 S.Ct. 1571. Although the Ninth Circuit Court of Appeals reversed that decision, the Supreme Court, in turn, reversed the Ninth Circuit, holding:

> [N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. *Heller*, 475 U.S. at 799, 106 S.Ct. 1571.

■ Although the First Circuit Court of Appeals endorsed the *Heller* decision in *Evans v. Avery*, 100 F.3d 1033, 1039 (1st Cir.1996), *cert. denied* 520 U.S. 1210, 117 S.Ct. 1693, 137 L.Ed.2d 820 (1997), the decisions in those cases do not mandate entry of judgment in favor of the City here. A jury's rendering of an inconsistent verdict does not mean that this Court *must*, pro forma, disregard such a verdict. *See Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439 (1933)(Brandeis, J.). In fact,

"it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them[.]" *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). In other words, "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

Plaintiff's counsel has failed to assist the Court with such a resolution. The thrust of Plaintiff's argument proceeds along two prongs.

### a. The Intentional or Reckless Distinction

First, Plaintiff avers that the jury's finding in favor of Humphrey and DeCelles but against the City on the § 1983 claim means that the jury intended to impose municipal liability for a negligent constitutional injury. That is so, he argues, because the Court's instructions to the jury directed it to find Humphrey and DeCelles liable only if it found an intentional or reckless constitutional violation. The lack of such a finding by the jury is, according to Jonielunas, not indicative of a more comprehensive finding that no constitutional violation occurred.

■ Proof of mere negligence is, however, insufficient to sustain a § 1983 claim of municipal liability based on a custom or policy. *See Williams v. City of Boston*, 784 F.2d 430, 434 (1st Cir.1986), *citing Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985), *cert. denied sub nom. Town of Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916). At a minimum, a plaintiff must demonstrate that the municipal defendants were grossly negligent *"to the point of* recklessness of delib-

erate indifference." *Williams,* 784 F.2d at 434–35 (emphasis added).

Thus, simple or even gross negligence is insufficient for the imposition of liability unless gross negligence is found and that gross negligence amounts to intentional or reckless conduct. *See Germany v. Vance,* 868 F.2d 9, 18 n. 10 (relying on Restatement (Second) or Torts § 500, cmt. f (1977) to explain that

> [a]n intentional violation of a person's constitutional rights occurs if the official desires to cause such a violation or believes that his conduct is certain to result in such a violation[,] [whereas] [a] recklessly or callously indifferent violation occurs...if the official believes (or reasonably should believe) that his conduct is *very likely* (but not certain) to result in such a violation).

■ Jonielunas's claim is, therefore, untenable based upon the relevant precedent. The jury did not find, and indeed legally could not have found, that either the individual defendants or the City was liable for a negligent constitutional deprivation. If, as the Plaintiff suggests ought to have been done, the jury had been asked simply whether "there was probable cause for Plaintiff's arrest," Jonielunas would have been erroneously relieved of his burden of proving that the alleged constitutional deprivation occurred with the requisite mental state. The Court declines to allow such relief.

### b. The "Policy" Not to Follow the City's Policy

Under the second prong of his argument, Jonielunas contends, as he has from the outset, that municipal liability is warranted in this case because the Worcester Police Department maintained a custom or policy of not following its own policy for investigating allegations of domestic abuse. With respect to that argument, any reasonable jury might have been confused, but, in any event, the instant case is distinguishable from the Supreme Court's decision in *Heller.*

In *Heller,* the Plaintiff's injuries were caused by a police officer who was indisputably following an official police policy of use of escalating force, culminating in the use of a chokehold, to subdue uncooperative suspects. *See City of Los Angeles v. Heller,* 475 U.S. 796, 802–03, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)(Stevens, J. dissenting). In contrast, Jonielunas alleges that his constitutional injury was a single manifestation of the Worcester Police Department's custom or policy of systematically declining to follow its own policy for investigating allegations of domestic abuse.

While municipal liability under § 1983 for a single incident of misconduct is normally precluded, *see Bordanaro v. McLeod,* 871 F.2d 1151, 1161 n. 8 (1st Cir.1989); *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), here the jury must have been convinced by Officer DeCelles's testimony, which he has since recanted, that he frequently declined to follow official policy with respect to domestic abuse investigations.

The Court is then left with the quandary of a verdict against the City but in favor of the individual defendants. The jury apparently decided that Jonielunas had suffered some violation of his constitutional right to be free from arrest except based upon a finding of probable cause but determined that the City should bear 90% of the liability for that violation. It therefore assessed the City's liability at $45,000 and DeCelles's at $5,000.

If, as defense counsel requested, the jury had been instructed not to consider the question of municipal liability if it

found no individual liability, the Court is persuaded that the full $50,000 liability would have been assessed against the individual defendants on the common law claim of false imprisonment.

A certain measure of the jury's confusion is attributable to both parties. Counsel for the Plaintiff did not clearly articulate that his theory of the case rested, not so much on an actual custom or policy of the City as on a pattern of failing to follow established custom or policy. Moreover, the defendants' witnesses offered confusing or inconsistent testimony, some of which has since been explained differently in memoranda of law. Nevertheless, the evidence apparently left an unclear picture in the minds of the jurors.

### c. Plaintiff's Miscellaneous Contentions

Plaintiff also relies on decisions of the Third and Ninth Circuit Courts of Appeals to support an additional claim that it is possible for a municipality to commit a constitutional violation in the absence of an underlying violation by an individual officer if the two claims were based upon two different theories. That contention was, however, squarely addressed and discounted by the First Circuit in its decision in *Evans v. Avery,* 100 F.3d 1033, 1039–40 (1st Cir.1996)("the [Third Circuit] panel improperly applied the Supreme Court's teachings" by ignoring the causation prong of the municipal liability analysis).

### ORDER

Based upon and in accordance with the foregoing, the Renewed (Post–Judgment) Motion for Judgment as a Matter of Law filed by the Defendants David DeCelles and the City of Worcester (Docket No. 109) is **DENIED** and a new trial of this case will be scheduled. Plaintiff's Motion for Attorney's Fees (Docket No. 112) and Defendants' Motion to strike Plaintiff's

Motion for Attorney's Fees (Docket No. 119) are **DENIED** as moot and the issue of prejudgment interest, argued by both parties in their memoranda, is also rendered moot.

**So ordered.**